The motion of defendant Carolina Risk Managers to join The Insurance Company of the State of Pennsylvania as a carrier/defendant party to this matter is GRANTED, for the purpose of allowing the defendants to litigate primacy of coverage, and seek orders pursuant to N.C.G.S. § 97-86.1, provided that no payment of compensation otherwise due from present defendants shall be withheld or delayed pending a decision on such issues, and it is so ORDERED.
It is also noted that, according to September 1, 1994 correspondence from Ms. Root, Continental Loss Adjusting Service, as servicing agent for the self-insured employer, paid compensation under the laws of the State of Georgia, and that liable defendants are entitled to seek orders allowing an offset for such payments per the provisions of N.C. Gen. Stat. § 97-36. The plaintiff testified he received four weekly payments. As this effects the amount of compensation due, it is incumbent on defendants to make any showing at hearing if they wish credit against any resulting award. However, since plaintiff's right to temporary total disability benefits was continuing at the close of the evidence under review, defendants may address a motion to the undersigned for an Order for credit against payments of compensation coming due in the future.
The primary controversy in this case is whether this Commission has jurisdiction of the plaintiff's admittedly compensable injury. The defendant-employer is an "employee leasing" company, and thus a joint employer, along with its clients, of all of its employees — some 5,000 in 28 states — except for an administrative and clerical staff of about 30 people, 25 of whom are located in Charlotte, North Carolina. Its president testified that the Charlotte location is its "corporate office" which "deals with administrative issues for all employees", handling payroll, taxes and contract administration, and houses his personal business offices. Plaintiff resides in South Carolina, applied for this employment initially by contacting one of Amlease's Georgia clients, and was injured while working as a long haul truck driver in Texas.
North Carolina has jurisdiction of an injury occurring outside its borders, when compensable under the definitions of our Act, if the employment contract was made in this State, or if "the employer's principal place of business" is here, or if the employee's principal place of employment is here. N.C. Gen. Stat. § 97-36. Jurisdiction is non-exclusive, and in fact, as noted above, provision is made for offsetting payments required by other jurisdictions so that the net benefit does not exceed that provided in our Act.
Much of defendants' argument is based on a "Pre-Employment Advisory" given the plaintiff. It declares that plaintiff is entitled to benefits based on the location of either the client/employer or the accident. However, no "contract or agreement . . . rule, regulation or other device" created prior to the injury, even if directly assented to by the employee, can limit the right to benefits provided by the Act. N.C. Gen. Stat. § 97-6; Loughridge v. Pulpwood Co., 266 N.C. 769, 772
(1966); 147 S.E.2d 213 (1966). While the paper declares that all of the defendant-employer's contracts "are made in North Carolina", it is argued that the contract was actually made in Georgia at the location of the client company, which made the decision to solicit plaintiff's application, and where, after Amlease's Charlotte office notified them that it was "acceptable", the client's personnel "complete[d] [the] hiring process". Plaintiff testified that he applied to the client company, Eastern Flatbed; that its manager told him "that as far as he was concerned that I had the job"; and that then the papers claimant had signed were sent off "to find out if I got hired". The evidence supports the Deputy Commissioner's conclusion that the "last act" necessary to complete the meeting of the minds and creation of the contract was Amlease's acceptance, even if continued employment was subject to plaintiff completing orientation or passing a physical, as well as satisfactory performance of driving duties. See Thomas v.Overland Express, 101 N.C. App. 90, 97, 398 S.E.2d 921 (1990), disc. rev. den., 328 N.C. 576, 403 S.E.2d 522 (1991). Alternatively, as the Deputy Commissioner's findings concerning these facts suggests, to the extent personnel of the client company committed Amlease to an employment contract, they were agents of Amlease.
Plaintiff also has the right to pursue his claim here because "the employer's principal place of business is in this state". N.C. Gen. Stat. § 97-36(ii). Defendant argues that plaintiff's connection with this State is tenuous, but that is a judgment for the legislature. The law contemplates that each firm will have a single "principal place of business" (synonymous with "principal office") where executive offices are housed, and "wherein . . . administrative activities are carried on". See, e.g., Crain andDenbo, Inc. v. Harris Harris Construction Co., Inc., 250 N.C. 106,111, 108 S.E.2d 122(1959); N.C. Gen. Stat. § 55-1-40(17); InRe: Moss Trucking Company, Inc., et. al, 16 N.C. App. 261,191 S.E.2d 919(1972). Its location, when not stipulated, is a question of fact. Nolan v. Blackston Construction Co., 244 N.C. 50,52, 92 S.E.2d 398(1956). The undisputed facts concerning Amlease's Charlotte offices, and the lack of evidence of comparable activity elsewhere, supports the finding that it is the "principal place of business" of Amlease.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, other than Findings of Fact 2, 3 and 9, Conclusions of Law 2, and Award paragraphs 1 and 4, primarily concerning interest and the unresolved compensation rate question, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. At the time in question defendant-employer was subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employment relationship existed between plaintiff employee and defendant-employer.
3. Defendant-employer was a qualified self-insured, whose claims were administered by Association Risk Management Service Company. Following the Deputy Commissioner's award, Carolina Risk Managers, as Administrators for North Carolina Transportation and Self-Insurers Fund appeared as defendant parties.
4. On May 2, 1994 plaintiff sustained an injury by accident arising out of and in the course of his employment, which occurred in Texas, giving rise to the jurisdictional issue primarily in dispute.
********
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. Plaintiff is an unemployed 39 year-old male who resides in Columbia, South Carolina. He is a high school graduate, but has not since received any type of further formal education and/or technical or vocational training. Although having done some carpentry as well as worked at a service station "way back"; the majority of his work experience has been in the truck driving trade.
2. In August of 1993 plaintiff was hired by American Transportation Services, Inc. as a truck driver leased to Eastern Flatbed Company when he answered an ad in the local newspaper and at the time of his injury was working for defendant-employer, which had since assumed operation of American Transportation's business.
Plaintiff was paid on a mileage basis and testified that he earned between $400.00 and $900.00 in a given week, averaging between $650.00 and $700.00. The latter figure would produce the maximum compensation rate for the year of his injury, $466.00. In light of the employer's possession of detailed payroll record, the hearing deputy ordered defendant to produce an IC Form 22 wage chart within 30 days of the filing of his opinion and award, but such has not been submitted. The Commission finds by the greater weight of the convincing evidence that plaintiff's average weekly wage at the time of the injury was not less than $700.00 per week, rendering the maximum compensation rate for 1994 of $466.00 per week.
3. In response to the same newspaper ad, plaintiff spoke by telephone with one of Eastern Flatbed's supervisor's, Charles Goff, at its terminal located near Savannah, Georgia. Plaintiff subsequently met with Mr. Goff on August 23, 1993, either at Eastern Flatbed's terminal or in Columbia, South Carolina where he lived, and not only executed the pre-employment advisory and conditions of employment (denominated Plaintiff's Exhibits A and B), but was also provisionally hired by Mr. Goff as a driver for Eastern Flatbed subject to the assent of American Transportation, it being the parties agreement that, upon the determining that Eastern Flatbed needed a driver and plaintiff met the relevant DOT requirements to become a qualified driver, Eastern Flatbed would initiate the hiring process because Transportation Services did not have one of its own supervisory personnel assigned to Eastern Flatbed's terminal, as it did for the majority of its clients. Mr. Goff provided the employee's information to American Transportation's administrative and operations offices in Charlotte, North Carolina in order that American Transportation could accept plaintiff as an employee by placing his name on its payroll, which was the last act necessary to a binding Contract of Employment between plaintiff and American Transportation resulting in the same contract of employment being made in North Carolina where American Transportation's administrative and operations offices were located, and is consistent with the terms of plaintiff's contract of employment contained in American Transportation's pre-employment advisory and conditions of employment indicating that contracts were made in North Carolina.
4. As a long haul driver leased to Eastern Flatbed, plaintiff made deliveries to the Midwest, Northeast and Southeast, including North Carolina, and on the May 2, 1994 date in question was involved in delivering a load of lumber to Dallas. As a result of two flat tires plaintiff was forced to stop at a service station in the Dallas suburbs to call his dispatcher at the Eastern Flatbed terminal outside of Savannah, Georgia in order for them to send someone to fix the tires. While stopped, it began to rain, forcing plaintiff to climb on top of the load of lumber to strap back down the two protective tarps covering his load that had separated. In the process of climbing back down plaintiff fell when he caught his pants leg on one of the tarp straps resulting in the admittedly compensable head injury giving rise hereto. Plaintiff remains under the care of his physicians in the Columbia, South Carolina area and unable to return to work because of the same injury.
5. Defendant-employer and its predecessor in interest, American Transportation Services, Inc., were both engaged in the employee leasing business, were affiliated Delaware corporations licensed to do business in North Carolina, and as affiliated corporations had common stockholders and boards of directors. In mid-1993, defendant-employer Amlease Corporation had begun taking over the accounts of American Transportation Services, and by the end of 1994 the takeover was complete, resulting in American Transportation Services no longer being actively in business. Although the original leasing company, American Transportation Services, Inc., primarily catered to the transportation industry (which still accounts for half of defendant-employer's business), it now also leases employees to the light manufacturing and construction trades.
6. Although the majority of its business is located in the Southeastern United States; defendant-employer does business in 28 states, including North Carolina. Of the same 5,000 employees, 30 work in one of defendant-employer's three offices and the remainder are leased to various companies in the trucking, light manufacturing and light construction trades and work at the business location of each client, including ones in North Carolina; however, defendant-employer has fewer leased employees in North Carolina than some of the other 27 states in which it also does business.
7. Although both defendant-employer and its predecessor, American Transportation Services, Inc. were incorporated in Delaware, neither ever had any offices there; but rather, their three offices were located in Charlotte, North Carolina; Little Rock, Arkansas and Atlanta, Georgia. The Little Rock, Arkansas and Atlanta, Georgia offices were merely sales or marketing offices and only employed five of the 30 office employees that were not leased to other businesses. The remaining 25 employees were located in either defendant-employer's corporate offices in the First Union Building in downtown Charlotte where, the CEO maintained his office, or at the Operations Center on Stuart Andrew Boulevard where the operations and administrative offices were located, including its payroll process, accounting department, MIS department, and managers, who had the authority to hire and fire its leased employees. Charlotte was also home of the two primary stockholders of both defendant-employer and its predecessor in interest, and four out of the five members of the Board of Directors of both lived in either Charlotte or the surrounding area. While defendant employer may have had fewer leased employees in North Carolina than in some other states, North Carolina was nonetheless its principal place of business, where 25 of the 30 office employees not leased to clients in the truck driving, light manufacturing and light construction trades were located, and the same office employees were primarily responsible for managing defendant-employer's employee leasing business; which again is consistent with the terms of plaintiff's contract of employment contained in American Transportation's pre-employment advisory and conditions of employment (denominated Plaintiff's Exhibits A and B), indicating that defendant-employer's principal place of business was in North Carolina. Defendant-employer did not have a trucking terminal or any type of manufacturing or construction facility in North Carolina or anywhere else, these being facilities of the clients to whom it leased employees. Defendant-employer's business instead was more of a service-related one involving leasing employees to various clients in the truck driving, light manufacturing and light construction trades, including supervisory personnel at most locations, and handling the taxes, payroll and other similar administrative functions for these same employees, rather than requiring their clients to do so, all of which occurred in Charlotte, North Carolina where defendant-employer's administrative and operations offices were located.
8. Plaintiff received approximately four weeks of workers' compensation benefits through the Georgia Industrial Commission, but no evidence of the amount has been presented.
9. The deputy commissioner commenced the initial hearing in this matter on October 19, 1994.
********
Based on the foregoing findings of fact, the Full Commission, makes the following additional
CONCLUSIONS OF LAW
1. For the reasons stated in the above Findings of Fact, not only was plaintiff's contract of employment made in North Carolina, but defendant-employer's principal place of business was located here, resulting in the Industrial Commission having jurisdiction over the disabling accidental injury plaintiff sustained while working out of state for the same employer on May 2, 1994. N.C.G.S. § 97-36.
2. On May 2, 1994 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, and as a result thereof has remained totally disabled since May 2, 1994, entitling him to compensation at the rate of $466.00 per week through the date of the hearing and continuing until he regains wage earning capacity or further orders of the Commission. N.C.G.S. §§ 97-29 and 97-2(5).
********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants, Amlease Corporation and Association Risk Management, or its successors, shall pay plaintiff compensation for continuing total disability compensation at a rate of $466.00 per week from May 2, 1994 through the time of the hearing before the Deputy Commissioner, until he regains wage earning capacity or further orders of the Commission.
2. An attorney fee in the amount of twenty-five (25%) of compensation is hereby approved as a reasonable fee for plaintiff's counsel, and 25% of the accrued portion shall be deducted from the award and forwarded directly to counsel. For the balance of his fee, defendant shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent the same are reasonably required to effect a cure, give relief, or lessen the period of disability, defendant shall pay all medical compensation expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same are submitted in accordance with the rules of the Industrial Commission.
4. Defendant shall pay interest on accrued but unpaid compensation at the judgment rate from October 19, 1995 or subsequent due dates, directly to the plaintiff. N.C. Gen. Stat. § 97-86.2.
5. Defendant shall bear the costs.
 S/ ________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ________________________ THOMAS J. BOLCH COMMISSIONER
JRW/md